On May 8, 1992, Kenny D. Fitzgerald was injured in an accident in Arkansas while driving a tractor-trailer truck for Austin Transportation, Inc. (the "company"). According to Fitzgerald, his injuries as a result of the accident were worsened because his truck did not have an operable seat belt. The company terminated Fitzgerald's employment in June 1992. Fitzgerald sued the company, alleging retaliatory discharge; he also sued several coemployees, namely, Rodney Austin, Jerry W. Malcom, Garry Hopper, Dave Williams, Steve Phillips, and Bobby Fitts, alleging that they had violated Ala. Code 1975, §25-5-11(c), by not maintaining or repairing a safety device, i.e., the seat belt. Polly Cagle, Fitzgerald's common law wife, sued the coemployees as well, alleging a loss of consortium. The trial court entered a summary judgment for the coemployees on Fitzgerald's § 25-5-11 claims and on Cagle's loss of consortium claim. Fitzgerald and Cagle appealed. The retaliatory discharge claim was severed from the coemployee claims and remains pending in the trial court; it is not at issue in this appeal.[1]
The trial court's summary judgment is based upon the tort rule of lex loci delicti, under which the courts of this state "will determine the substantive rights of an injured party according to the law of the state where the injury occurred."Fitts v. Minnesota Mining Manufacturing Co., 581 So.2d 819,820 (Ala. 1991). The trial court held that the rule applies in this case and that the law of Arkansas, which is the state where the injury occurred, does not, under the facts of this case, permit an employee to sue a coemployee for the coemployee's negligent acts. Therefore, the trial court entered summary judgment in favor of the coemployees. Fitzgerald argues that the lex loci delicti rule does not apply to this case, or, in the alternative, that if the rule does apply, an exception should be made in this particular case. He *Page 797 
also argues that Arkansas law would permit recovery because the provisions of § 25-5-11 are procedural, not substantive, in nature. Based upon the Alabama Supreme Court's adherence to thelex loci delicti rule and based upon our review of Arkansas law, we affirm.
Fitzgerald argues that the lex loci delicti rule does not apply to this case because the "wrong" prohibited by §25-5-11(c) occurred in Alabama. He also argues that he suffered mental anguish over his nonfunctional seat belt within the state of Alabama, and, thus, that he was injured in Alabama. We are not persuaded by either argument.
The Alabama Supreme Court has reaffirmed the lex loci delicti
rule several times in the recent past. See, e.g., Fitts, 581 So.2d at 823; Powell v. Sappington, 495 So.2d 569 (Ala. 1986); and Norris v. Taylor, 460 So.2d 151 (Ala. 1984). In Fitts our supreme court considered at length other approaches to the conflict of laws question solved by application of the long-standing rule. Fitts, 581 So.2d at 820-23. Much like Fitzgerald, the appellant in Fitts, who was seeking damages for wrongful death from an airplane manufacturer, argued that thelex loci rule was "outmoded and unfair" and also urged the court to consider a public policy exception. Id. at 820 and 823. The Supreme Court adhered to the traditional lex loci rule and declined to make a public policy exception. Id. at 823.
Likewise, in Norris, our supreme court declined to make an exception to the lex loci rule in the workers' compensation context. In Norris, the appellant Norris, who was an Alabama resident employed by an Alabama company, was injured on a work site in Kentucky. Norris, 460 So.2d at 152. Norris sued his coemployees, alleging that they had negligently selected an unsafe ladder for a job that Norris was to perform. Id. The coemployees, in their answer, alleged that Kentucky law applied and that Kentucky law prohibited coemployee actions. Id. On appeal, Norris argued that the lex loci rule did not apply because the wrongful conduct he complained of, the negligent or wanton conduct of his coemployees, occurred in Alabama. The supreme court disagreed, stating that the place of injury, not the place of the negligent act or omission, controls. Id. at 152-53 (citing Alabama Great Southern R.R. v. Carroll, 97 Ala. 126,11 So. 803 (1892)).
The holding of Norris was reaffirmed in Powell, in which our supreme court rejected the appellant's argument that an exception to the lex loci rule exists "in the [workers'] compensation context where an injured employee . . . elect[s] to accept benefits under the [workers'] compensation act of his state of employment and not the state where the injury occurred." Powell, 495 So.2d at 570. The court stated: "We therefore hold that a claimant who is injured in another state cannot evade the application of the lex loci delicti rule merely by filing his [workers'] compensation claim in Alabama."Id.
Fitzgerald's other argument, that he suffered mental anguish over his nonfunctional seat belt in this state and was thus injured in this state, is also not supported by the law of Alabama. For "an employee in Alabama to recover for psychological problems, there must be a physical injury to the body." Goolsby v. Family Dollar Stores of Alabama, Inc.,689 So.2d 104, 106 (Ala.Civ.App. 1996). The injury to Fitzgerald's body occurred outside the state of Alabama; therefore, he cannot claim that he was "mentally injured" inside the state, so as to require the application of Alabama law to the claims against his coemployees.
In light of our supreme court's clear pronouncements that thelex loci delicti rule applies equally to both typical tort claims and to tort claims arising out of on-the-job injuries, we must affirm the trial court's determination that the lexloci rule requires application of Arkansas law to Fitzgerald's claims. In addition, despite Fitzgerald's urging and his compelling arguments, we cannot adopt an exception to the lexloci rule in workers' compensation cases. Finally, we cannot agree with Fitzgerald's contention that mental anguish suffered within the state is sufficient to constitute an injury within the state so as to allow the application of Alabama law. However, our inquiry is not at an end. We must further determine whether, under Arkansas *Page 798 
law, Fitzgerald would be entitled to recover against his coemployees.
Fitzgerald argues that, even if Arkansas law applies, we should still apply § 25-5-11(c), and particularly the definitions of "willful conduct" contained therein. He argues that the provisions of that statute are procedural rules, or rules of evidence, which can be applied despite the application of Arkansas tort law. Although Fitzgerald's argument is based on the legal principle underlying the lex loci delicti rule, which requires a state to apply only the substantive law of the other state, he incorrectly contends that § 25-5-11(c) is procedural in nature. " 'The distinction between "substance" and "procedure" has medieval origins: a court will apply foreign law only to the extent that it deals with the substance of the case, i.e., affects the outcome of the litigation, but will rely on forum law to deal with the "procedural" aspects of the litigation.' " Etheredge v. Genie Industries, Inc.,632 So.2d 1324, 1326 (Ala. 1994) (quoting Eugene F. Scoles Peter Hay, Conflict of Laws 57 (1992)). Section 25-5-11(c), which defines "willful conduct" as that term is used in § 25-5-11(b), which in turn provides the right to sue a coemployee, is clearly substantive in nature. Our supreme court, in construing § 25-5-11(c), has commented that it is a "limited exception to the exclusivity of the workers' compensation scheme." Layne v.Carr, 631 So.2d 978, 982 (Ala. 1994). An exception to the exclusivity of our workers' compensation scheme can hardly be considered a statute of procedure or a rule of evidence. The application of § 25-5-11(c) would clearly affect the outcome of the litigation, and we hold that the statute is substantive in nature. Therefore, we must now consider whether Arkansas law would allow a coemployee action under the facts of this case.
The Arkansas statute concerning the exclusivity of Arkansas's workers' compensation scheme is Ark. Code Ann. § 11-9-105(a) (1996), which reads:
 "The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer, or any principal, officer, director, stockholder, or partner acting in his capacity as an employer, or prime contractor of the employer, on account of the injury or death, and the negligent acts of a coemployee shall not be imputed to the employer. No role, capacity, or persona of any employer, principal, officer, director, or stockholder other than that existing in the role of employer of the employee shall be relevant for consideration for purposes of this chapter, and the remedies and rights provided by this chapter shall in fact be exclusive regardless of the multiple roles, capacities, or personas the employer may be deemed to have."
(Emphasis added.) The Arkansas Supreme Court has observed that "the reason for the exclusivity provision . . . mirrors the general purpose behind our Workers' Compensation Act, which was to change the common law by shifting the burden of all work-related injuries from individual employers and employees to the consuming public with the concept of fault being virtually immaterial." Brown v. Finney, 326 Ark. 691, 694,932 S.W.2d 769, 771 (1996). As a result, the Arkansas court stated that it "take[s] a narrow view of any attempt to seek damages beyond that favored, exclusive remedy." Brown, 326 Ark. at 694,932 S.W.2d at 771.
Arkansas also has a statute governing an injured employee's right to sue a third party: Ark. Code Ann. § 11-9-410(a)(1)(A) (1996). It reads: " The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make a claim or maintain an action in court against any third party. . . ." The injured employee in Brown
argued that § 11-9-410(a)(1)(A) allowed a third-party action against a coemployee. Brown, 326 Ark. at 694-95,932 S.W.2d at 771. The court addressed that argument, recognizing that the statute did indeed provide that an employee was not prohibited from bringing a third-party action. Brown, 326 Ark. at 695,932 S.W.2d at 771. In fact, the court even noted that an earlier case had held that *Page 799 
" '[u]nder a statute like ours a negligent coemployee is regarded as a third person.' " Brown, 326 Ark. at 695,932 S.W.2d at 772 (quoting King v. Cardin, 229 Ark. 929,319 S.W.2d 214 (1959)). However, the court stated: "Since that decision, we have examined negligent or injurious actions by fellow employees in the context of whether such employees were third parties not immune from suit based upon the duties they were performing or the roles they were undertaking at the time."Brown, 326 Ark. at 696, 932 S.W.2d at 772.[2] The court went on to trace the development of Arkansas law on coemployee actions, including in its discussion Simmons First National Bank v.Thompson, 285 Ark., 275, 686 S.W.2d 415, 417 (1985), and Allenv. Kizer, 294 Ark. 1, 740 S.W.2d 137,140 (1987).
In 1985, the Arkansas Supreme Court stated the rationale that would become the guidepost in Arkansas law on coemployee actions. See Thompson, 285 Ark. at 278, 686 S.W.2d at 417. After discussing King and other cases, the supreme court concluded: "[The] reasoning has usually been that since an employer is immune under the statutes from a negligent failure to provide employees with a safe place to work, the same immunity protects supervisory employees when their general duties involve the overseeing and discharging of that same responsibility." Id. Therefore, under Thompson, "supervisory employees are immune from suit for negligence in failing to provide a safe place to work." Allen, 294 Ark. at 6,740 S.W.2d at 140.
In Allen, the court was faced with the issue whethernonsupervisory employees could be sued for negligence in failing to provide a safe work environment. The plaintiff inAllen, the estate of a deceased employee, alleged that the employee's nonsupervisory coemployee had failed to check or repair, or had negligently checked or repaired, some electrical equipment, and that the coemployee's failure or negligence had resulted in the electrocution of the employee. Id. After discussing the court's prior cases, including Thompson, the court held that the coemployee, even if he had been negligent, was immune from suit because his duties, i.e., inspecting electrical equipment, involved providing or maintaining a safe place to work. Id. Therefore, under Arkansas law, even nonsupervisory employees are immune from suit if their duties involve providing or maintaining a safe place to work. Id.
Fitzgerald argues that his coemployees, Rodney Austin, Jerry W. Malcom, Garry Hopper, Dave Williams, Steve Phillips, and Bobby Fitts, failed to repair or replace his seat belt, which Fitzgerald argues, and which the company agrees, is a safety device. To determine whether Fitzgerald's employees are immune from suit, we must decide whether each of them has the duty of providing or maintaining a safe workplace. Rodney Austin is the president of the company, and his duties include making certain that necessary inspections are performed. Jerry W. Malcom is the personnel director and a safety director for the company. His duties include overseeing and implementing the safety program of the company and he directly supervises safety in the shop, which is the department that inspects and repairs the company's trucks. Dave Williams is the company's part-time safety director. Although he, too, is responsible for overseeing the safety program, he does not directly supervise safety in the shop. Garry Hopper is the executive vice president of operations for the company. His duties included supervising the shop foreman and safety directors. Steve Phillips and Bobby Fitts were both shop supervisors, whose duties were to make certain that inspections were properly conducted, to ensure that any necessary repairs or replacements of parts were completed, and to otherwise properly direct shop work.
Fitzgerald's coemployees are all supervisory employees charged with either the duty to *Page 800 
directly oversee replacement of parts like the seat belt or, in a supervisory capacity, the duty to ensure that those charged with the duty to repair the truck completed that duty. Their duties were part of the employer's overall duty to provide a safe working environment. Therefore, under Arkansas law, Fitzgerald's coemployees are immune from suit.
The only exception to coemployee immunity is when the injured employee is able to show "actual, specific, and deliberate intent by the employer to injure him." Sontag v. Orbit ValveCo., 283 Ark. 191, 194, 672 S.W.2d 50, 51 (1984). As noted above, Fitzgerald has argued that Alabama's definition of "willful conduct" in § 25-5-11(c) is a procedural rule and should be applied to this case so that it can come under the Arkansas exception. Even if we agreed that § 25-5-11(c) was procedural and not substantive, we do not agree that the application of Alabama's definition of "willful conduct" would result in liability for Fitzgerald's coemployees.
"A mere allegation of wilful or wanton conduct will not suffice" to escape the exclusivity provisions of the Arkansas workers' compensation scheme. Hill v. Patterson, 313 Ark. 322,325, 855 S.W.2d 297, 298 (1993). Instead, a plaintiff must allege an "intentional or deliberate act by the employer with adesire to bring about the consequences of the act." Miller v.Ensco, Inc., 286 Ark. 458, 460, 692 S.W.2d 615, 617 (1985). InMiller, the employee argued that the employer's failure to abide by governmental regulations and his failure to provide adequate safety information and equipment was tantamount to a deliberate intent to injure his employees. Miller,286 Ark. at 459, 692 S.W.2d at 616. The court stated:
 "[I]t is the nature of the acts complained of that determines the cause of action. Here, the [employer's] failure to warn of dangers or failure to provide safe conditions, deliberately placing [the employee] in a dangerous position and wilfully violating governmental regulations, does not bring the cause of action within the ambit of an intentional tort."
Miller, 286 Ark. at 461, 692 S.W.2d at 617. Like the facts inMiller, the facts alleged by Fitzgerald fail to show "that the [company] committed acts with an 'actual, specific and deliberate intent . . . to injure the employee'. . . . There were no facts alleged to show that the [company] had a 'desire' to bring about the consequences of the acts or that the acts were premeditated with the specific intent to injure the [employee]." Id. Fitzgerald's allegations cannot establish the exception to coemployee immunity.
In conclusion, Alabama's adherence to the lex loci delicti
rule requires that Arkansas law be applied to Fitzgerald's claims against his coemployees. Under Arkansas law, Fitzgerald's coemployees are immune from suit. Therefore, the summary judgment in favor of those coemployees is affirmed.
AFFIRMED.
YATES and THOMPSON, JJ., concur.
ROBERTSON, P.J., and MONROE, J., concur in the result.
[1] Cagle makes no arguments regarding her loss of consortium claim, so we do not address that portion of the summary judgment.
[2] We note that the dissenting opinion in Brown indicates that the Arkansas Legislature amended § 11-9-410 in 1993 to include a subparagraph that stated "The purpose and intent of the reenactment of this statute is to annul any and all case law inconsistent herewith." Brown, 326 Ark. at 703,932 S.W.2d at 776. The dissenters argued that the legislature had intended to annul coemployee immunity by this statement. However, the majority was not persuaded, and coemployee immunity is still the law in Arkansas.